UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GEICO INDEMNITY COMPANY as Subrogee of Katrina Scott,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

3:24-cv-00681 (BKS/ML)

UNITED STATES OF AMERICA,

        Counter-Claimant,

v.

GEICO INDEMNITY COMPANY as Subrogee of Katrina Scott,

        Counter-Defendant.

**Appearances:**

*For Plaintiff and Counter-Defendant*:
Jan Meyer
Law Offices of Jan Meyer & Associates, P.C.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666

*For Defendant and Counter-Claimant*:
Carla B. Freedman
United States Attorney
David M. Katz
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Geico Indemnity Company, as Subrogee of Katrina Scott, commenced this action on May 17, 2024 against Defendant United States of America, asserting a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671. (Dkt. No. 1). Defendant subsequently filed counterclaims alleging tortious conduct by Plaintiff's Subrogor. (Dkt. No. 5). Plaintiff failed to respond to the counterclaims and accordingly, the clerk entered default as to Plaintiff on September 26, 2024. (Dkt. No. 11). Presently before the Court is Plaintiff's motion to vacate the clerk's entry of default. (Dkt. No. 15). Defendant has filed a status report noting that it takes no position as to whether the default should be vacated. (Dkt. No. 16). For the following reasons, the Court grants Plaintiff's motion to vacate the default.

**II.     BACKGROUND[1]**

   **A.      The Parties**

Plaintiff GEICO Indemnity Company is a corporation formed under the laws of the State of Virginia in the business of automobile insurance. (Dkt. No. 1, ¶¶ 1–2). Katrina Scott was at all relevant times insured by Plaintiff. (*Id.* ¶ 4). Plaintiff brings its claims against the United States of America in connection with a motor vehicle accident involving the vehicle of Plaintiff's insured and an employee of the United States Government, Postal Service ("USPS"). (*Id.* ¶¶ 5–6).

---

[1] The facts are drawn from the complaint and attached exhibits (Dkt. No. 1) and the counterclaim (Dkt. No. 5).

B. **The Incident**

On October 22, 2022, Plaintiff's insured was driving her 2018 Ford Escape on Salt Road, at or near the intersection with Stauber Road, in Groton, New York. (*Id.* ¶¶ 17–18). That day, USPS employee Alisa Hines was performing official duties in a Grunman Long Life Vehicle owned by USPS ("USPS vehicle") at the intersection of Salt Road and Stauber Road. (Dkt. No. 5, ¶ 3, at 9). At approximately 3:00 p.m., at this intersection, there was a collision between the vehicle of Plaintiff's insured and the USPS vehicle. (*Id.* ¶ 5, at 9).

Plaintiff alleges that the USPS vehicle was parked illegally on Salt Road with no lights on. (Dkt. No. 1, ¶ 19). Plaintiff further alleges that "Plaintiff's insured slowed down to proceed on passing the stationary United States Postal vehicle, at which time, the operator of the United States Postal vehicle" acted recklessly, carelessly, willfully and wantonly, and/or negligently by failing to pay proper attention, signal, look out, and/or yield right of way such that a collision occurred between the vehicle of Plaintiff's insured and the USPS vehicle. (*Id.* ¶ 21). Consequently, the vehicle of Plaintiff's insured sustained property damage and Plaintiff paid property damage claims totaling $15,613.48. (*Id.* ¶¶ 22–23). Plaintiff alleges that Defendant breached a duty of reasonable care owed to Plaintiff's insured and brings a claim against Defendant for money damages in the amount of $15,613.48. (*Id.* ¶ 25–27).

In a counterclaim against Plaintiff asserted in its answer, Defendant, on the other hand, alleges that:

> Plaintiff's Subrogor operated the Escape negligently, failed to keep the Escape under reasonable control, operated the Escape in violation of local ordinances and New York State law relating to the operation of motor vehicles, failed to maintain a proper lookout for vehicles in the roadway, failed to yield to other vehicles in the roadway, and failed to act with reasonable care to avoid the Incident.

3

(Dkt. No. 5, ¶ 8, at 10). Defendant further alleges that the incident "occurred solely due to the negligence of Plaintiff's Subrogor," and that as a result of the incident, USPS sustained property damage to the USPS vehicle in the amount of $10,154.27. (*Id.* ¶¶ 9–10, at 10).

### C. Procedural Background

On April 19, 2023, Plaintiff submitted an SF-95 Claim Form to USPS, which was subsequently denied by USPS on November 20, 2023. (Dkt. No. 1, ¶¶ 11–12). On or about April 11, 2024, Plaintiff submitted a formal request for reconsideration of the final denial of claim, which was subsequently denied by USPS on April 22, 2024. (*Id.* ¶¶ 13, 15). USPS submitted a claim to Plaintiff in connection with the incident, which Plaintiff denied. (Dkt. No. 5, ¶¶ 6–7, at 10).

Plaintiff initiated this lawsuit on May 17, 2024. (Dkt. No. 1). Defendant filed its answer and counterclaim against Plaintiff on July 22, 2024. (Dkt. No.5). Plaintiff's answer to the counterclaim was due on August 12, 2024, but Plaintiff did not file a response. (Dkt. No. 9). On September 16, 2024, Magistrate Judge Miroslav Lovric held a Rule 16 Initial Conference and counsel for Plaintiff failed to appear. (*Id.*). Magistrate Judge Lovric instructed Plaintiff to file a status report by September 23, 2024, and rescheduled the Rule 16 Initial Conference for October 1, 2024 at 3:00 p.m. On September 23, 2024, Defendant requested entry of default against Plaintiff, and on September 26, 2024, the Clerk entered default as to Plaintiff. (Dkt. Nos. 10–11). Because Plaintiff failed to comply with the order to file a status report, Magistrate Judge Lovric again directed Plaintiff to file a status report, this time by September 30, 2024. (Dkt. No. 12).

On September 27, 2024, Plaintiff filed a status report apologizing for its failure to appear, assuring the Court that it would take precautions to prevent such a recurrence, and requesting that the Rule 16 Initial Conference be rescheduled because Plaintiff's counsel had a telephone conference scheduled in another case at the same date and time. (Dkt. No. 13). Magistrate Judge

4

Lovric did not respond to the request to reschedule, (*see generally* Docket), and Plaintiff's counsel again failed to appear at the continuation of the Rule 16 Initial Conference. (Dkt. No. 14).

On October 8, 2024, Plaintiff filed the instant motion to vacate the Clerk's Entry of Default. (Dkt. No. 15). On October 25, 2024, Defendant filed a status report indicating that it took no position as to whether the default should be vacated. (Dkt. No. 16).

### III.    PLAINTIFF'S MOTION

#### A.    Standard of Review

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Here, there has been an entry of default, but default judgment has not been rendered. Therefore, the "good cause" standard of Rule 55(c), rather than the "excusable neglect" standard of Rule 60(b), *see New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005), applies.

"Because Rule 55(c) does not define the term 'good cause,'" the Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* "Other relevant equitable factors may also be considered," such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.*

The burden of showing good cause is shouldered by the party moving to set aside the default. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). But the Second Circuit expresses a strong "preference for resolving disputes on the merits," *Brien v.*

5

*Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995), and "[d]efault judgments 'are generally disfavored and are reserved for rare occasions,'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96). Accordingly, "good cause" under Rule 55(c) "should be construed generously." *Enron Oil Corp.*, 10 F.3d at 96. "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Ultimately, "dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Id.* at 95.

    **B.**    **Discussion**

        **1.**    **Willfulness**

Plaintiff argues that its default was "hardly willful, but rather a product of inadvertent lapse of internal communication." (Dkt. No. 15-1, ¶ 8). Willfulness in the context of a default is "'conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). "'[A] finding of bad faith is [not] a necessary predicate to concluding that a [defaulting party] acted 'willfully,''"; rather, "'it is sufficient' to conclude 'that the [defaulting party] defaulted deliberately." *Id.* (quoting *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)). "[T]he good cause standard attaches consequences only to bad faith or tactical violations of court orders." *United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023).

Here, Plaintiff's counsel alleges that on July 23, 2024, her office reached out to their liaison within GEICO, proposing that GEICO retain her firm to defend the counterclaim. (Dkt.

No. 15-1, ¶ 4). Her firm did not receive a response until October 1 when the GEICO liaison replied and said she was authorized to retain the firm to defend the counterclaim. (*Id.* ¶ 5). Plaintiff's default, therefore, was not willful, deliberate, or egregious; nor does the record demonstrate that Plaintiff's counsel engaged in bad-faith or tactical violations of court orders. Thus, construing the good cause standard generously and resolving doubt in favor of Plaintiff, Plaintiff's counsel, while perhaps negligent, was not willful. *See Car-Freshner Co. v. Air Freshners, Inc.*, No. 10-cv-1491, 2012 WL 3294948, at *4, 2012 U.S. Dist. LEXIS 112826, at *11 (N.D.N.Y. Aug. 10, 2012) ("[W]illfulness within this Circuit does not include careless or negligent errors even when the negligence is gross." (citing *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996))). Moreover, the relatively short period in which Plaintiff was in default counsels in favor of Plaintiff: Plaintiff moved to set aside the entry of default less than two weeks after the Clerk's entry of default. (Dkt. Nos. 11, 15); *see New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-449, 2020 WL 2770922, at *4, 2020 U.S. Dist. LEXIS 83499, at *12–13 (E.D.N.Y. May 8, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 2770015, 2020 U.S. Dist. LEXIS 93477 (E.D.N.Y. May 28, 2020); *cf. McNulty*, 137 F.3d at 738–39 ("[D]efaults have been found willful where, for example, an attorney . . . delayed more than 10 months before moving to vacate the ensuing default[.]" (citing *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1117 (1979)).

    **2.    Prejudice**

Plaintiff argues that Defendant would not be prejudiced by the vacatur of the entry of default. (Dkt. No. 15-1, ¶ 9). Defendant has "neither claimed nor proved prejudice." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981); (*see* Dkt. No. 16). Plaintiff first argues that Defendant would suffer no prejudice because the delay in this case is less than two months from when the answer to the counterclaim was originally due to when the motion for vacatur was filed. (Dkt.

7

No. 15-1, ¶ 9). Furthermore, to the extent that the two months delay would cause any hardship to Defendant, "delay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98.

Secondly, Plaintiff argues that Defendant would suffer no prejudice because the claims and counterclaim revolve a common nucleus of operative facts. (Dkt. No. 15-1, ¶ 9). The government has known about the relevant facts since the beginning of the litigation, because the claim and counterclaim are "simply direct inverse assertions of one another," so "any proofs that the government would adduce to prove the counterclaim would . . . have been preserved by the government for purposes of its defense of GEICO's claims." (*Id.*); *Starling*, 76 F.4th at 102 ("As to prejudice, the government has made no effort to show its interests would be harmed by having to defend a forfeiture suit against a claimant it knew of from the beginning."). On these grounds, the Court finds that granting vacatur of the default would not cause Defendant undue prejudice.

### 3. Meritorious Defense

Plaintiff argues that it has a meritorious defense against the counterclaim. (Dkt. No. 15-1, ¶ 10.) "A [claimant] seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98. But the "test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* That is, to establish a meritorious defense, a claimant "need not establish [the] defense conclusively," *McNulty*, 137 F.3d at 740; rather, "[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make," *Am. All. Ins. Co., Ltd.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

For the Defendant to prevail in its counterclaim, it must demonstrate "by a preponderance of the evidence, that (1) [Plaintiff's insured] owed . . . a duty of care, (2) that duty was breached,

8

and (3) the breach proximately caused [the] injuries." *Manhattan by Sail, Inc. v. Tagle*, 873 F.3d 177, 183 (2d Cir. 2017).

Here, Plaintiff submits an email from its insured stating, in part:

> We came up behind a usps mail truck. It was just sitting in the road. With no lights on. I slowed down then went to go around it. Cause we didn't know if it was having problems. When I got beside of it. It decided to turn left. It hit me on the right front corner of my 2019 Ford excape [sic]. . . . The driver got out came to my window said she never seen us.

(Dkt. No. 15-2, at 2). Plaintiff argues that "[i]f the contents of this statement are proven at trial, GEICO will successfully defend against the counterclaim (and prove its claims)." (Dkt. No. 15-1, ¶ 10). Defendant "dispute[s] Plaintiff's factual allegations and submits that the proof will show Plaintiff's subrogee bore the fault for the accident insofar as Plaintiff's subrogee crossed over a double-yellow line to pass the government-owned vehicle on the left and hit the government-owned vehicle while it was turning." (Dkt. No. 16, at 1).

While the Court acknowledges that "[c]rossing a double yellow line . . . constitutes negligence as a matter of law, unless justified by an emergency situation not of the driver's own making," *Foster v. Sanchez*, 17 A.D.3d 312, 313 (2d Dep't 2005), New York law does allow an exception "[w]hen an obstruction exists making it necessary to drive to the left of the center[.]" N.Y. Veh. & Traf. Law § 1120(a)(3). Therefore, if Plaintiff's version of the facts is proven at trial, a jury could reasonably find that the USPS vehicle constituted an obstruction and that Plaintiff's insured was not negligent in going around it.

On this record, the Court finds that Plaintiff has "present[ed] some evidence beyond conclusory denials to support [its] defense," *Enron Oil Corp.*, 10 F.3d at 98, that "give[s] the factfinder some determination to make," *Am. All. Ins. Co., Ltd.*, 92 F.3d at 61 (quoting *Anilina*

9

*Fabrique de Colorants*, 856 F.2d at 879), and thereby "adequately stated a defense for purposes of a Rule 55(c) set aside of an entry of default." *Enron Oil Corp.*, 10 F.3d at 98.

In sum, because Plaintiff's default was not willful, because setting aside the default will not cause prejudice to the Defendant, and because Plaintiff has presented evidence of a meritorious defense, Plaintiff has demonstrated good cause for setting aside the entry of default. Accordingly, Plaintiff's motion is granted.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to set aside the entry of default and for leave to file an answer to the counterclaim, (Dkt. No. 15), is **GRANTED**; and it is further

**ORDERED** that the entry of default, (Dkt. No. 11), is set aside; and it is further

**ORDERED** that Plaintiff's answer to the counterclaim must be filed within thirty days of the date of this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated:  November 21, 2024
       Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge